# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| DOUGLAS MARCUM, | : | Case No. 3:15-cv-245 |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Chief Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| CAROLYN W. COLVIN, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.      Introduction

Plaintiff Douglas Marcum applied for a period of disability, Disability Insurance Benefits, and Supplemental Security Income on June 21, 2012.  He asserted that he could no longer work a substantial paid job as of December 1, 2009 due to atrial fibrillation, degenerative arthritis, right ankle pain, and depression.  His application, medical records, and other evidence proceeded to a hearing before Administrative Law Judge (ALJ) James I. K. Knapp who later issued a written decision.  The result of his decision was the denial of Plaintiff's application based on his central conclusion that Plaintiff was not under a "disability" as defined in the Social Security Act.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff brings the present case challenging ALJ Knapp's non-disability decision. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), the administrative record (Doc. #6), and the record as a whole.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Knapp's non-disability decision.

## II.     Background

Plaintiff asserts that beginning on December 1, 2009, he has been under a "disability." On the date he applied for benefits, he was forty-seven years old and was therefore considered a "younger person" under Social Security Regulations. He has a high school education and was employed as a machine maintenance worker for approximately ten years.

### A.     Medical Source Opinions

Dr. William Fenberg is Plaintiff's family physician. Dr. Fenberg has known Plaintiff for at least twenty years and has treated him for hyperthyroidism, chronic atrial fibrillation/irregular heart rhythm, and anxiety. (Doc. #6, *PageID* #507). Dr. Fenberg stated that Plaintiff could not be "prompt and regular in attendance" because when his heart goes out of rhythm, it makes him weak, short of breath, dizzy, and off balance. *Id.* at 508. He explained that it could last for several days at a time. *Id.*

Dr. Fenberg's treatment notes indicate that Plaintiff reported chest tightness and soreness at times, but the "[p]ains do not seem to be aggravated by activity." *Id.* at 400. However, Dr. Fenberg said that Plaintiff's lifting and carrying could cause a heart-rhythm problem and, as a result, he can lift ">5 pounds" – presumably meaning "greater than 5 pounds" – for short

2

periods totaling not more than 2.5 hours during the workday. *Id.* at 510. Dr. Fenberg also noted that Plaintiff was not able to lift/carry a maximum of ten pounds on a sustained basis. *Id*. at 514.

Dr. Fenberg believed that Plaintiff's ability to stand, walk, and sit could be affected by his impairments. *Id.* He limited Plaintiff's standing and walking to a total of thirty minutes to four hours on average, and he limited his standing to up to one to two hours during a work day. *Id.* at 510-11. Dr. Fenberg further stated that Plaintiff was restricted from working with moving machinery, heights, chemicals, temperature extremes, dust, noise, fumes, and humidity because they "may trigger episodes." *Id.* at 512.

In his response to interrogatories, Dr. Fenberg remarked:

> Many of these questions are hard to say "yes" or "no" as Doug has the type of medical condition which can be triggered by "nothing" or "anything' and when they occur it's hard to say how long they will last – and the impairment from these episodes make[s] it hard to perform physical or mental activities. Surgical therapy was tried once to cure [the] problem but it was not successful.

*Id.*

Dr. Amita Oza evaluated Plaintiff on October 9, 2012. *Id.* at 388. Plaintiff reported that he had a history of irregular heartbeat, hyperthyroidism, and anxiety. *Id.* at 388. She noted he has a surgical scar on his right ankle, and "he has very minimal limited range of motion, but he does not limp…." *Id.* at 289. She concluded that he is status post-right-ankle fracture with mild arthritis in his ankle, but it does not cause him significant problems. *Id.* at 390. Dr. Oza's physical exam notes indicate that Plaintiff's heartbeat was "irregularly irregular with rapid rate." *Id.* at 289. She recommended that he see a cardiologist to determine if he can perform any work-related activities. *Id.*

3

Dr. Christopher Ward evaluated Plaintiff to assess his mental status in September 2012. *Id.* at 382. Dr. Ward diagnosed him with Major Depressive Disorder and Generalized Anxiety Disorder. *Id.* at 386. He explained that Plaintiff's depressive symptoms may compromise his ability to respond to work pressures and lead to increased emotional instability and withdrawal. He also indicated that Plaintiff's anxious symptoms could lead to an increased likelihood of agitation and anxiety attacks. *Id.* at 386.

Several state agency consultants reviewed Plaintiff's records. Dr. Diane Manos believed that Plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently. *Id.* at 109. She stated that he could stand and/or walk approximately six hours in an eight-hour workday, and he could also sit for six hours in an eight-hour workday. *Id.* at 120. She found that Plaintiff could never climb ladders, ropes, or scaffolds, but he could climb stairs and ramps, stoop, and crouch frequently. *Id.* at 110. On re-consideration, Dr. Eli Perencevich reached the same conclusions. *Id.* at 132-44.

Dr. Roseann Umana reviewed Plaintiff's mental residual functional capacity. She noted that he was moderately limited in his ability to maintain attention and concentration for extended periods, work in coordination with or in proximity to others, and complete a normal workday and workweek without interruption from psychologically based symptoms. *Id.* at 112. She concluded he was "[c]apable of tasks that have no fast pace and no strict production demands." *Id.* She determined he was moderately limited in his ability to interact appropriately with the general public, but he was "[c]apable of occasional interactions with others." *Id.* Finally, she noted he was moderately limited in his ability to respond appropriately to changes in the work setting, but he was "[c]apable of tasks with few changes." *Id.* Dr. Melanie Bergsten reviewed

4

Plaintiff's mental capacity on re-consideration and agreed with Dr. Umana's conclusions. *Id.* at 140-42.

      B.      **Plaintiff's Testimony**

Plaintiff testified at the hearing before the ALJ that he worked as machine maintenance worker from 1999 to December 2009, when he was let go due to "[h]aving cases of vertigo and double vision." *Id.* at 83. Plaintiff stated that he has episodes of arrhythmias every day, and they are brought on by nervousness, anxiety, loud voices, and new people. *Id.* at 84. Arrhythmias make him weak and short of breath. *Id.* He takes anxiety medication, and it helps him to calm down. *Id.* at 84-85. He explained, "[t]hese unpredictable circumstances really make my heart jump out. And to make it go back in is a lot harder than to make it go out." *Id.* at 94. He also said that he was scared of having these episodes because his doctor said that "after four hours it causes permanent – irreversible damage." *Id.* Plaintiff is not currently being treated for his heart issues because he stopped taking medications after none worked. *Id.* at 95. He also has depression that makes him want to be left alone. *Id.* at 87. When he wants to be left alone, he does not answer phone calls or respond to mail, and he ignores people. *Id.* at 93.

Plaintiff's left ankle was crushed during an accident at work in 2002, leaving him with pain that feels "like grinding up chunks of something in your ankle somedays, and stiffness and pain deep in the bone." *Id.* at 86. He is currently not taking medication for his ankle. *Id.*

During a typical day, Plaintiff walks around Woodlawn Cemetery to pass time. *Id.* at 87. He walks five to ten minutes and then sits down, leans against a tree, and takes in the sights. *Id.* at 88. He walks for thirty to forty-five minutes total. *Id.* Other than walking, he watches the weather in the morning, takes thirty-minute naps. He will nap more than once a day if his heart

is "not beating right." *Id*. at 91. He reads for four to five hours a day. *Id.* at 89. He does not have any hobbies, and he does not visit people very often. *Id.* at 90. He attends church twice a month. He does not wash the dishes, sweep or vacuum, do yardwork, go grocery shopping, or cook meals (he makes peanut butter and jelly sandwiches). He does his own laundry.

Plaintiff testified that he can walk a couple blocks at one time on a flat surface before needing to stop, sit, and rest. *Id*. He can stand for thirty minutes to one hour, sit for thirty minutes to one hour. *Id.* at 91-92. He could be on his feet, standing or walking, for a total of two to four hours. *Id.* at 92.

During the hearing, the ALJ briefly explored Plaintiff's ability to lift by asking, "What's the most weight you can lift comfortably?" *Id*. Plaintiff answered, "Comfortably? Comfortably 25, 20 pounds." *Id*.

### III.  "Disability" Defined and Standards of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1)(D), 1382(a). The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by

6

substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry – reviewing the correctness of the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**IV.    The ALJ's Decision**

As noted previously, it fell to ALJ Knapp to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set

7

forth in the Social Security regulations.  *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.[2]  He reached the following main conclusions:

Step 1:   Plaintiff has not engaged in substantial gainful employment since December 1, 2009.

Step 2:   He has the severe impairments of status post ankle fracture, irregular heart rhythm, and generalized anxiety disorder.

Step 3:   He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:   His residual functional capacity, or the most he could do in a work setting despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of light work subject to the following limitations:  he cannot lift more than twenty pounds occasionally and ten pounds frequently; he cannot stand for more than thirty minutes at one time or more than four hours in an eight hour day; he cannot walk more than fifteen minutes at one time or more than one hour in an eight hour day; he cannot do more than occasional climbing of stairs and no climbing of ladders or scaffolds; he cannot work at unprotected heights or work involving the operation of moving machinery; he cannot have more than occasional contact with the public or co-workers; and he cannot do more than low stress work activity.

Step 4:   He is unable to perform any of his past relevant work.

Step 5:   He could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 62-73).  These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability.  *Id.*

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

V. **Discussion**

   A. **The Parties' Main Contentions**

Plaintiff contends that the ALJ erred in rejecting the opinions of his long-term treating physician Dr. Fenberg and instead relying on the opinions of consulting physician Dr. Oza, consulting psychiatrist Dr. Ward, and the non-examining State agency reviewers.  Plaintiff reasons that the ALJ did not weigh these medical source opinions as required by the Commissioner's own rulings and regulations and by Sixth Circuit caselaw.  Plaintiff also argues that the ALJ erred in finding that Plaintiff was not credible.

The Commissioner maintains that the ALJ properly weighed Dr. Fenberg's opinions and reasonably concluded that his opinions were not entitled to any weight.  The Commissioner further argues that the ALJ properly evaluated Dr. Oza's opinions and the opinions provided by Drs. Ward, and the State agency record reviewers.  Further, according to the Commissioner, the ALJ did not err in his credibility findings, and "there was a plethora of evidence that undermined [Plaintiff's] credibility."  (Doc. #10, *PageID#* 553).

   B. **Medical Source Opinions**

ALJ Knapp determined that "Dr. Fenberg's physical and mental assessments are not entitled controlling or deferential or other preferential weight under the Regulations."  *Id.* at 71.  These conclusions reflect the ALJ's consideration of Dr. Fenberg's opinions under the treating physician rule and other factors described in the Regulations.

The treating physician rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion is "well supported by medically acceptable clinical and

laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [a claimant's] case record."

*Gayheart v. Comm'r Social Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citation omitted); *see Gentry*, 741 F.3d at 723.  "The premise of the rule is that treating physicians have the best detailed and longitudinal perspective on a claimant's condition and impairments and this perspective 'cannot be obtained from objective medical findings alone.'" *Gentry*, 741 F.3d at 723 (citations omitted).

"When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).  "However, in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Id*. (citing and quoting parenthetically, Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4 ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.")).

The ALJ first reasoned that Dr. Fenberg's assessments of Plaintiff's work limitations and abilities "are contradicted by the assessments of reviewing and examining medical sources, and they lack supportability in, or consistence with, the record.  The claimant's own testimony as to his physical ability undercuts Dr. Fenberg's dire assessment of his physical abilities." *Id*. at 71. Yet, the ALJ failed to weigh the opinions provided by several reviewing sources – namely, Dr.

10

Umana, Dr. Manos, or Dr. Perencevich – under any of the applicable factors.  This failed to comply with the regulatory and case-law mandate that instructs ALJs to weigh reviewing and examining medical sources' opinions under the factors of supportability, consistency, specialization, and "other factors."  See 20 C.F.R. 404.1527(c), (e); see also Soc. Sec. R. 96-6P, 1996 WL 374180, *2 (July 2, 1996); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 836-37 (6th Cir. 2016) ("Unless an ALJ assigns controlling weight to a treating physician's opinion, the ALJ must consider 'all' of the above factors 'in deciding the weight [the ALJ] give[s] to any medical opinion.'" (citations omitted)).  Additionally, the ALJ applied far greater scrutiny to Dr. Fenberg's opinions than to the opinions of each non-treating medical source.  This constituted error because "[a] more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires." *Gayheart*, 710 F.3d at 379.

> The ALJ did not explain his conclusion that Plaintiff's testimony undercuts Dr. Fenberg's opinions, and he did not identify any particular testimony by Plaintiff that was inconsistent with Dr. Fenberg's opinions.  *See* Doc. #6, *PageID* #71.  For example, Plaintiff testified that he could lift twenty to twenty-five pounds "comfortably," but he was never asked how frequently or how many times he could lift such weight.  As a result, his ability to comfortably lift this weight did not conflict with Dr. Fenberg's opinions about his limited ability to lift lesser amounts of weight frequently and occasionally.  *See* Doc #6, *PageID*# 510.  Additionally, Plaintiff's ability to comfortably lift twenty to twenty-five pounds says nothing probative about whether he could perform sedentary, light, or heavy work because none of these classifications identifies the maximum amount of weight a person can lift on one occasion, and each of these work

11

classification considers how much weight a person can lift and/or carry frequently and occasionally during a workday and workweek.  *See* 20 C.F.R. 404.1567.

  The ALJ also rejected Dr. Fenberg's opinions concerning Plaintiff's mental functioning because "mental functioning ability is not his area of expertise."  (Doc. #6, *PageID#* 71).  Although specialization is a factor to be considered under the Regulations, it does not permit an ALJ to fully reject a long-term treating physician's opinions without providing more specific reasoning concerning his or her supposed lack of expertise.  This is particular salient here because Dr. Fenberg is a Board Certified Family Physician.  *Id*. at 507.  The American Board of Family Medicine, the body responsible for certifying family-medicine physicians, describes family medicine as "the medical specialty that provides continuing, comprehensive health care for the individual and family. It is a specialty in breadth that integrates the biological, clinical and behavioral sciences...." See American Board of Family Medicine, https://www.theabfm.org/index.aspx (search public database: "What is family medicine?") (emphasis added).  Given the inclusion of behavioral sciences within this medical specialty, substantial evidence does not support the ALJ's decision to fully reject Dr. Fenberg's opinions on the ground he is not a mental-health specialist.

  The ALJ erred in rejecting Dr. Fenberg's opinions by based on Plaintiff's so-called "reluctance" to seek or obtain treatment from a cardiologist or mental-health professional.  *Id*. at 71.  Plaintiff testified that medications were not successful in treating his cardiac condition.  *Id*. 95.  Dr. Fenberg stated that surgery for Plaintiff's cardiac condition had not been successful.  *Id*. at 514.  There is no indication that a cardiologist could provide additional treatment that would improve Plaintiff's heart condition and work abilities.  As to his mental work abilities, although

12

Plaintiff did not receive mental-health treatment, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1988).

Turning to consulting physician Dr. Oza, the ALJ erred in relying on Dr. Oza's opinions, to find that Plaintiff could perform light work. The ALJ recognized, "Dr. Oza recommended the claimant see a cardiologist" for his heart condition. *Id*. at 69. Still, substantial evidence does not support the ALJ's conclusion that "Dr. Oza's findings do not suggest that claimant is incapable of lifting 20 pounds occasionally and 10 pounds frequently." *Id*. Dr. Oza specifically stated that, in regards to Plaintiff's ability to perform work activity, [h]e needs to be seen by a cardiologist to opine if he can perform any work-related activities." *Id*. at 389. Dr. Oza's findings, therefore, do not indicate that Plaintiff could perform any work activity, let alone, light exertional work activity, since Dr. Oza specifically deferred Plaintiff's work limitations concerning his heart problems to a cardiologist. Consequently, the ALJ's reliance on Dr. Oza's lack of finding that Plaintiff was not restricted to less than light exertional work activity was misplaced.

As to Dr. Ward, while the ALJ did give his opinions great weight, the ALJ neglected to consider the effect of Plaintiff's anxiety on his heart condition. *See id*. at 69. He also gave the non-examining State agency, reviewing psychologist Dr. Umana's opinions deference but, again, he failed to evaluate her opinions under the correct legal standards and failed to consider the combination of Plaintiff's anxiety and heart condition. *Id*. at 70. The ALJ similarly erred in giving greater deference to the opinions of the non-examining, State agency physicians Drs. Manos and Perencevich, who also did not consider the effects of Plaintiff's anxiety on his heart

13

condition. *Id.* Dr. Fenberg reported that Plaintiff's anxiety could trigger his cardiac episodes. *Id.* at 511. Because of the previously discussed problems with the ALJ's decision to reject Dr. Fenberg's opinion, the ALJ erred by not addressing the effect, including the potential causative effect, anxiety had on Plaintiff's cardiac problem, and the impact the combination of these two impairments had on his work abilities.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.

## C. Remand is Warranted

Remand is warranted when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand for an ALJ's failure to follow the regulations might arise, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff's credibility lacking, *Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted

14

"only where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking." *Felisky*, 35 F.3d at 1041 (quoting *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence four of §405(g) due to problems set forth above. On remand the ALJ should be directed to review Plaintiff's disability claim to determine anew whether he was under a benefits-qualifying disability under the applicable 5-Step sequential evaluation procedure, including, at a minimum, a re-assessment of the medical source opinions and the combined effects of Plaintiff's mental and physical impairments.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Douglas Marcum was under a "disability" within the meaning of the Social Security Act;

3. This matter be remanded to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the docket of this Court.


Date: August 2, 2016                                    *s/Sharon L. Ovington*
                                                         Sharon L. Ovington
                                                         Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).